# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3699
_____

Keith Byron Baranski

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 20, 2017
Filed: January 23, 2018
_____

Before LOKEN, ARNOLD, and SHEPHERD, Circuit Judges.
_____

LOKEN, Circuit Judge.

In November 2002, a jury convicted Keith Baranski, a federally licensed firearms dealer, of conspiracy to import machine guns from Eastern Europe by submitting forms with false entries to the Bureau of Alcohol, Tobacco and Firearms

(ATF).  The district court[1] imposed a sentence of sixty months in prison and three years of supervised release.  Baranski appealed; we affirmed.  United States v. Baranski, 75 F. App'x 566 (8th Cir. 2003).  The district court subsequently denied his post conviction motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255; we again affirmed.  Baranski v. United States, 2006 WL 472451 (E.D. Mo. Feb. 27, 2006), aff'd, 515 F.3d 857 (8th Cir. 2008).

Baranski completed serving his prison sentence and three years of supervised release in August 2009.  In 2011, he filed a Petition for Writ of Error Coram Nobis, asserting violations of his constitutional rights at trial.  As later amended, the Petition asserted that new evidence establishes the government failed to disclose that it promised cooperating conspirator James Carmi a further sentence reduction for his testimony at trial; misled the court and the defense about Carmi's incarceration exposure; and deliberately withheld medical records tending to show that Carmi's trial testimony was tainted by amnesia and memory loss.  After a two-day evidentiary hearing, the district court dismissed the Petition in a thorough 72-page Memorandum and Order.  Baranski appeals.  We affirm.

## I. The Writ of Error Coram Nobis in Federal Court.

The writ of error *coram nobis* is an ancient common law remedy that modern federal courts are authorized to issue under the All Writs Act, 28 U.S.C. § 1651(a).  See United States v. Morgan, 346 U.S. 502, 506 (1954).  As applied in criminal cases, *coram nobis* "is a step in the criminal case and not, like habeas corpus . . . the beginning of a separate civil proceeding. . . . This motion is of the same general character as one under 28 U.S.C. § 2255."  Id. at 505 n.4.  First enacted in 1948, § 2255 is a comprehensive statutory remedy intended "to meet practical difficulties"

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

of federal habeas corpus jurisdiction. United States v. Hayman, 342 U.S. 205, 219 (1952). The Reviser's Note to § 2255 explained that the statute "restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus." Id. at 218.

"[T]he All Writs Act is a residual source of authority . . . . Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Carlisle v. United States, 517 U.S. 416, 429 (1996) (quotation omitted); see United States v. Denedo, 556 U.S. 904, 911 (2009). Section 2255, like habeas corpus, is limited to persons "in custody." Thus, "coram nobis relief is available when the defendant is no longer in custody for the applicable conviction, while custody is a prerequisite for habeas relief." United States v. Camacho-Bordes, 94 F.3d 1168, 1172 n.6 (8th Cir. 1996); see United States v. Little, 608 F.2d 296, 299 (8th Cir. 1979) (coram nobis and § 2255 are "substantially equivalent" remedies).

The Supreme Court held in Morgan that the enactment of § 2255 created no bar to granting a writ of error *coram nobis* to a person who was convicted of a federal crime but is no longer in custody. 346 U.S. at 511. However, the Court explained, this "extraordinary remedy" should be allowed "only under circumstances compelling such action to achieve justice." Id. *Coram nobis* relief has been called the criminal-law equivalent of the Hail Mary pass in American football. United States v. George, 676 F.3d 249, 251 (1st Cir. 2012). There is good reason for this reluctance. "The further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment. . . . The writ of error coram nobis lies at the far end of this continuum." Id. at 258.

Res judicata does not apply to successive petitions for federal habeas or § 2255 relief. See Sanders v. United States, 373 U.S. 1, 14 (1963). However, limitations on

the filing of successive habeas petitions in 28 U.S.C. § 2244(b), a federal habeas statute, establish a "qualified application of the doctrine of res judicata." McCleskey v. Zant, 499 U.S. 467, 486 (1991), quoting S. Rep. No. 1797, at 2 (1966), 1966 U.S.C.C.A.N. at 3664. The Court in McCleskey defined an abuse-of-the-writ inquiry that a petitioner must satisfy to warrant relief on a successive post-conviction habeas or § 2255 petition. Id. at 489-96. Under Morgan, a petitioner who was denied § 2255 relief while serving his sentence and is no longer in federal custody may seek what is in substance successive post-conviction relief by filing a petition for a writ of error *coram nobis*. 346 U.S. at 505-06, 505 n.4. Unless he is required to make at least the same showing as a prisoner who seeks successive § 2255 relief, "federal prisoners might deliberately wait until after their sentences expire to challenge their convictions." United States v. Correa-De Jesus, 708 F.2d 1283, 1286 (7th Cir. 1983).

In the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress imposed stricter limitations on the filing of second and successive § 2255 motions than the abuse-of-the-writ principles applicable under former § 2244(b) and McCleskey. First, a second or successive § 2255 motion must now be authorized "by a three-judge panel of the court of appeals." 28 U.S.C. § 2244(b)(3)(B). This rule may not be evaded "by simply filing a successive § 2255 motion in the district court." Boykin v. United States, 242 F.3d 373 (Table), No. 99-3369 at *1 (8th Cir. 2000). Second, a court of appeals panel may not certify a second or successive § 2255 motion unless it contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2255(h). Section 2255(h)(1) "alters the common law miscarriage of justice exception . . . by changing the standard from 'more likely than not' to 'clear and convincing evidence.'" United States v. Williams, 790 F.3d 1059, 1076 (10th Cir. 2015). Given that habeas, § 2255, and criminal *coram nobis* relief are substantively indistinguishable, a critical issue on this appeal, not addressed by the district court, is whether AEDPA's restrictions on successive § 2255 motions affect the availability of *coram nobis* relief to a petitioner whose claim would be barred had he petitioned for relief while still in federal custody.

The first question is procedural: whether a *coram nobis* petitioner whose motion for § 2255 relief was denied while he was in custody must obtain authorization from a three-judge panel of the court of appeals in accordance with § 2244(b)(3)(B). Given the legislative history of these remedies -- in particular, the Reviser's Note explaining that § 2255 is a "procedure in the nature of the ancient writ of error coram nobis" -- we believe that Congress, had it focused on this question, would have required *coram nobis* petitioners in this situation to obtain court of appeals authorization. But the restriction is in § 2244(b), which is plainly limited to "a second or successive habeas corpus application," and the cross-reference in § 2255(h) is similarly limited to a "second or successive [§ 2255] motion." As Congress did not impose this restriction on *coram nobis* petitioners seeking successive post-conviction relief, we may not read it into the statutes.

The second question is substantive: whether AEDPA's restrictions on the grant of successive relief set forth in § 2255(h)(1) and (2) limit the grant of *coram nobis* relief to a petitioner whose motion for § 2255 relief was denied while he was still in custody. We conclude the answer to this question must be yes. Congress and the Supreme Court have reacted to "the increasing burden on federal courts caused by successive and abusive petitions" by enacting and amending 28 U.S.C. § 2244(b) and by refining and strengthening the Court's equitable abuse-of-the-writ jurisprudence. See McCleskey, 499 U.S. at 481-89. These efforts have been complementary, at least

for the most part. The Supreme Court has ruled that, even when the terms of AEDPA do not govern a particular case, "a court of appeals must exercise its discretion in a manner consistent with the objects of the statute. In a habeas case, moreover, the court must be guided by the general principles underlying our habeas corpus jurisprudence." Calderon v. Thompson, 523 U.S. 538, 554 (1998). When a procedural Rule 60(b) motion "is in substance a successive habeas petition [it] should be treated accordingly." Gonzalez v. Crosby, 545 U.S. 524, 531 (2005). Likewise, we have stated that "[t]he writ of coram nobis may not be used to circumvent the clear congressional directive embodied in the 'second or successive' provisions of § 2255." United States v. Noske, 235 F.3d 405, 406 (8th Cir. 2000).

It is widely accepted that custody is the only substantive difference between *coram nobis* and habeas petitions. See Chaidez v. United States, 133 S. Ct. 1103, 1106 n.1 (2013). *Coram nobis* relief is not available to a federal prisoner while in custody, even if a successive § 2255 motion would be barred by AEDPA's restrictive standards. See United States v. Brown, 178 F. App'x 299 (4th Cir. 2006); United States v. Baptiste, 223 F.3d 188, 189-90 (3d Cir. 2000). Given that *coram nobis* is an extraordinary remedy available at the far end of a post-conviction continuum only for the "most fundamental" errors, Morgan, 346 U.S. at 512, it would make no sense to rule that a petitioner no longer in custody may obtain *coram nobis* relief with a less rigorous substantive showing than that required by AEDPA's limitations for successive habeas corpus and § 2255 relief. Therefore, we conclude that Baranski's *coram nobis* petition is subject to the restrictions on second or successive § 2255 motions set forth in § 2255(h)(1) and (2).

## II.

Turning to the facts of this case, the trial testimony of cooperating conspirators James Carmi and Jeff Knipp, corroborated by other government witnesses and extensive documentary evidence, established that Baranski obtained machine guns

in Eastern Europe and placed them in a bonded customs warehouse; Carmi used bribes to obtain fictitious letters from Knipp, chief of police of Farber, Missouri, and other law enforcement officials requesting demonstrations or indicating a desire to purchase the weapons; and Baranski used those letters to fraudulently remove machine guns from the customs warehouse and sell them to Carmi. See 26 U.S.C. §§ 5844(1), 5861(*l*).

Baranski alleged that his conviction and sentence should be vacated because the government violated the constitutional principles of Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), by (i) failing to disclose that it offered Carmi a Rule 35 sentence reduction in return for his testimony at Baranski's trial, and letting Carmi falsely testify that he had not asked for and expected no further reduction; (ii) failing to turn over medical records regarding Carmi's mental problems and memory loss following a May 2000 motorcycle accident -- records that could have been used for impeachment purposes; (iii) failing to disclose Carmi's PSR and allowing Carmi to testify falsely about his sentence exposure; and (iv) vindictively prosecuting Baranski for filing a Bivens action challenging the seizure of his firearms.

After a two-day evidentiary hearing, the district court rejected all claims on the merits and dismissed the *coram nobis* petition. First, the court found that Carmi was not promised a Rule 35 sentence reduction in exchange for testifying against Baranski. Moreover, "[t]he jury that found Mr. Baranski guilty heard Carmi testify his sentence was cut in half for agreeing to cooperate against Mr. Baranski," so he "failed to show the likelihood of a different result great enough to undermine confidence in the outcome of the trial." Second, the court found that Carmi testified "extensively and truthfully" regarding his injury and memory loss issues. None of the documents relating to mental condition and memory loss "would have opened a new line of impeachment or provided a different avenue of impeachment." There was no Brady violation because the records not produced were "similar to and largely

cumulative of the information that was available to Mr. Baranski's defense team before trial."

Third, the court found that the government did not mislead the defense regarding Carmi's incarceration exposure. Baranski has not shown "a reasonable probability that had the PSR's incorrect sentencing range [for Carmi] been disclosed, the result of the proceeding would have been different, such that confidence in the outcome of the trial is undermined." Finally, the court found that the allegation of vindictive prosecution was factually without merit.

The district court's lengthy Memorandum and Order noted that defense counsel's cross examination at trial included "Carmi's mental health and memory loss, the charges Carmi pleaded guilty to, his sentencing exposure, promises the Government made to Carmi . . . and the benefits he received, and the possibility of Carmi receiving a motion pursuant to Rule 35." The court further noted "there was corroborated evidence and testimony, including Mr. Baranski's own personal communications to Carmi, concerning the criminal scheme charged in the case." The court concluded "that Mr. Baranski has failed to meet his burden to establish that he is entitled to the extraordinary relief of coram nobis."

On appeal, in addition to challenging all the district court's essential findings, Baranski argues he is entitled to *coram nobis* relief because, if the government had made the required disclosures and not elicited false testimony, "there is a reasonable probability that . . . the result of the proceeding would have been different," the standard for determining whether a Brady/Giglio violation is material. Smith v. Cain, 132 S. Ct. 627, 630 (2012). As we have explained, that is not the proper standard for obtaining substantively successive post-conviction *coram nobis* relief. Rather, Baranski must present "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the

-8-

offense." 28 U.S.C. § 2255(h)(1).[2] He has no new evidence relating to the elements of the offense that would support a claim of actual innocence, only allegedly new information that no doubt would have expanded defense counsel's cross examination and attempted impeachment of cooperating conspirator Carmi on subjects that were extensively explored at trial. Applying the proper § 2255(h) substantive standard, the district court did not abuse its discretion in concluding that no "fundamental" error warranted issuing an extraordinary writ of error *coram nobis*.

The Order of the district court dated March 31, 2016 is affirmed.

_____

[2]Baranski is not relying on a new, retroactive rule of constitutional law, so § 2255(h)(2) is not at issue.