# SUPREME COURT OF THE UNITED STATES

## DAVID BROWN *v.* LOUISIANA

ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME
COURT OF LOUISIANA

No. 22–77.   Decided April 3, 2023

The motion of Current and Former Prosecutors, et al. for leave to file a brief as *amici curiae* is granted.  The petition for a writ of certiorari is denied.

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR and JUSTICE KAGAN join, dissenting from the denial of certiorari.

Petitioner David Brown and four codefendants were convicted of first-degree murder in Louisiana following an attempted prison escape.  Brown acknowledged that he was involved in his codefendants' initial assault on the victim (one of the prison guards).  But during and throughout the trial, Brown insisted that he was not present when the victim was killed, and that he did not intend for the victim to die.  Had the jury found Brown less culpable than his codefendants, that finding could have served as a mitigating factor that spared him a sentence of death.  Yet the only evidence supporting Brown's account was his own self-serving statement given to police shortly after the event.  The jury voted to sentence Brown to death.

As it turned out, one of Brown's codefendants, Barry Edge, had confessed to a fellow inmate.  The prosecution obtained a statement from the inmate prior to Brown's trial, but did not disclose it to Brown's counsel until after his sentencing.  In the confession, Edge explained that he and another codefendant, Jeffrey Clark, were "'the only ones that were thinking rationally during th[e] highly charged situation,'" and that he "'and Jeff[rey Clark] made the decision'" to kill the victim in order to help themselves.

2016–0998, pp. 131–132 (La. 1/28/22), 347 So. 3d 745, 835. At no point in the confession did Edge suggest Brown was involved in the fatal attack; his description of the events leading up to the murder did not mention Brown at all.

The central question before this Court is whether the prosecution violated Brown's due process rights by failing to disclose this confession. *Brady* v. *Maryland*, 373 U. S. 83 (1963). Because the evidence was plainly "favorable" and "material" to Brown's penalty phase, *id.*, at 87, I would have granted certiorari and summarily reversed.

This Court established decades ago that evidence is favorable in the *Brady* context if it has "some value" in helping the defendant's case. *Kyles* v. *Whitley*, 514 U. S. 419, 450 (1995). We have further explained that there is value where, for example, the evidence tends to exculpate the defendant or impeach a witness, *ibid.*, or might reduce the potential penalty, *Brady*, 373 U. S., at 88. Favorable evidence also qualifies as material if there is "any reasonable likelihood" it could have "affected the judgment of the jury." *Wearry* v. *Cain*, 577 U. S. 385, 392 (2016) (*per curiam*) (internal quotation marks omitted).

Here, Edge's confession satisfies the favorability test: By inculpating Edge and Clark in the victim's death—without any mention of Brown—the confession supports an inference that Brown was *not* one of the individuals who killed or decided to kill the victim. It thus provides "some value" in supporting Brown's argument that he was less culpable than his codefendants and did not deserve to be sentenced to death. *Kyles*, 514 U. S., at 450; see also *id.*, at 450–451 (finding evidence with "some" tendency to exculpate the defendant favorable, even though it did not preclude the defendant's participation in the offense).

Edge's confession was also material to the penalty phase of Brown's trial. The fact that Edge confessed without naming Brown or suggesting that he had participated in the murder supplied independent evidence corroborating

Brown's argument that he was not present during the murder and did not intend to kill the victim. Because Louisiana law requires the jury to consider whether the defendant was a "relatively minor" participant in the offense, as well as "[a]ny other relevant mitigating circumstance," La. Code Crim. Proc. Ann., Arts. 905.3 and 905.5, Brown could have used Edge's confession to bolster his mitigation case. And had Brown's jury been presented with the confession, there is a reasonable probability that at least one juror might have viewed Brown's culpability in a different light. See *Cone* v. *Bell*, 556 U. S. 449, 475 (2009) (penalty phase materiality turns on whether, had the evidence not been suppressed, there was a reasonable probability that at least one juror might have voted to "imprison [the defendant] for life rather than sentence him to death"); see also *Wearry*, 577 U. S., at 392 (to be material, the suppressed evidence need only be "sufficient to undermine confidence in the verdict" (internal quotation marks omitted)).

The Louisiana Supreme Court nevertheless held that Edge's confession was not favorable to Brown because it did not specify who actually killed the victim, nor did it expressly state that Brown was "not present or not involved." 347 So. 3d, at 836. The requirement that the withheld evidence must speak to or rule out the defendant's participation in order for it to be favorable is wholly foreign to our case law. See, *e.g., Kyles*, 514 U. S., at 450–451. And it appears that that erroneous requirement tainted the Louisiana Supreme Court's materiality analysis as well. At the materiality stage, the court again emphasized that the confession did not "preclude" or "speak to" Brown's intent or participation, 347 So. 3d, at 837, thereby substantially discounting reasonable inferences about the degree or extent of Brown's participation that a jury might otherwise have drawn. The court then recounted various other reasons why a jury might disregard Edge's statement, while completely "ignoring reasons [it] might not." *Wearry*, 577 U. S.,

at 394; cf. *Smith* v. *Cain*, 565 U. S. 73, 76 (2012) ("[T]he State's argument offers a reason that the jury *could* have disbelieved [the] undisclosed statements, but gives us no confidence that it *would* have done so.").

We have repeatedly reversed lower courts—and Louisiana courts, in particular—for similar refusals to enforce the Fourteenth Amendment's mandate that favorable and material evidence in the government's possession be disclosed to the defense before trial. See, *e.g., Kyles*, 514 U. S., at 422, 450–453; *Smith*, 565 U. S., at 76–77; *Wearry*, 577 U. S., at 392–394, 396. This Court has decided not to grant Brown's petition for certiorari, but that determination should in no way be construed as an endorsement of the lower court's legal reasoning. In my view, the Louisiana Supreme Court misinterpreted and misapplied our *Brady* jurisprudence in a manner that contravenes settled law.