*Ervine v. Smith*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28ᵗʰ day of June, two thousand twenty-four.**

**PRESENT:**

> **GERARD E. LYNCH,**
> **SUSAN L. CARNEY,**
> **MICHAEL H. PARK,**
> > *Circuit Judges.*

---

**Moses Ervine,**

> *Petitioner-Appellant,*

> v.                                                          22-1165

**Joseph T. Smith,**

> *Respondent-Appellee.*

---

| | |
|---|---|
| **FOR PETITIONER-APPELLANT:** | ANDREW H. FREIFELD, Esq., New York, NY. |
| **FOR RESPONDENT-APPELLEE:** | ROBERT C. MCIVER, Assistant Attorney General, (Ira M. Feinberg, Deputy Solicitor General for Criminal Matters, Barbara D. Underwood, Solicitor General, *on the brief*), *for* Letitia James, Attorney General, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

A New York state jury convicted Moses Ervine of first-degree manslaughter for the May 1, 2006 killing of Johans Gonzalez. Ervine now challenges that conviction via a federal habeas petition. *See* 28 U.S.C. § 2254. The district court denied relief as to each of Ervine's several claims; we granted a certificate of appealability as to two. First, Ervine challenges the trial court's determination that he forfeited by misconduct his Confrontation Clause rights as to one witness, Maurilio Lagunas. Second, Ervine claims that the trial court incorrectly determined that the state's late disclosure of certain evidence did not violate his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), because Ervine could not demonstrate prejudice. We assume the parties' familiarity with the facts, procedural posture, and issues on appeal.[1]

A.     Legal Standards

Section 2254 "functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011)

---

[1] The government moves to supplement the record on appeal with (1) the judgment roll created in the state court proceedings and filed with the Appellate Division during Ervine's direct appeal; (2) a copy of the decision of the Appellate Division; (3) a copy of the New York Court of Appeals' denial of Ervine's application to appeal; (4) several exhibits from the trial court proceedings; and (5) documents related to the deportation of an absent eyewitness. Dkt. 127. On February 26, 2024, a motions panel granted the government's motion as to categories (2) and (3) and referred the remaining aspects of the motion to this panel. Dkt. 136. We now grant the motion as to the documents in categories (1) and (4), as they were part of the record before the trial court and are "material" to the issues on appeal. Fed. R. App. P. 10(e)(2). We deny the motion as to the documents in category (5), as they were not before the trial court. *Natofsky v. City of New York*, 921 F.3d 337, 344 (2d Cir. 2019) ("Rule 10(e) is not a device for presenting evidence to this Court that was not before the trial judge." (cleaned up)).

(cleaned up). For claims adjudicated on the merits, § 2254 offers relief only when such adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We review the denial of a § 2254 petition de novo. *Scrimo v. Lee*, 935 F.3d 103, 111 (2d Cir. 2019).

"Clearly established federal law" refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (cleaned up). A state-court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 73. A state-court decision reflects an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (cleaned up).

A state court makes an "unreasonable determination of the facts" only when "reasonable minds could not disagree" that such a determination was error. *Cardoza v. Rock*, 731 F.3d 169, 177-78 (2d Cir. 2013); *see Rice v. Collins*, 546 U.S. 333, 341-42 (2006). Paradigmatic examples of such error include "ignor[ing] highly probative and material evidence," or "misapprehend[ing] and mistat[ing] aspects of the record." *Cardoza*, 731 F.3d at 178. A "state-court factual determination is not unreasonable," however, "merely because the federal habeas court would have

3

reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

B. Confrontation Clause Claim

The Confrontation Clause guarantees the accused's right to cross-examine witnesses. U.S. Const. amend. VI; *see Cotto v. Herbert*, 331 F.3d 217, 229 (2d Cir. 2003). But the right may be forfeited by misconduct. *See United States v. Dhinsa*, 243 F.3d 635, 651 (2d Cir. 2001); *Reynolds v. United States*, 98 U.S. 145, 159-60 (1878). Relevant here, defendants waive their rights under the Confrontation Clause when they (1) are responsible for procuring the unavailability of a witness; and (2) act with an intent to procure that witness's unavailability. *See Dhinsa*, 243 F.3d at 653-54; *Giles v. California*, 554 U.S. 353, 367 (2008).

Ample evidence supports the trial court's conclusion that Ervine waived his right to confront Lagunas. Lagunas testified before the grand jury that Ervine threatened him in various ways. Among them, Ervine promised that the "same thing" that happened to Gonzalez would happen to Lagunas if he were to "say something." Joint App'x at 314. And, shortly after the homicide, two men attempted to kidnap Lagunas by posing as police officers, an attempt Lagunas escaped only by climbing through the window of the kidnappers' car. *Id.* at 317. Other evidence tended to show that Lagunas took these threats seriously. For example, Lagunas agreed to testify before the grand jury only after receiving assurances from a prosecutor that the proceedings were secret. And when officers made contact with Lagunas in 2009 about returning to New York to testify, he said that he would not return because he was "afraid." *Id.* at 160, 189. It was thus reasonable for the trial court to find Ervine responsible for intentionally procuring Lagunas's absence.

Ervine's arguments to the contrary are unavailing. First, Ervine notes that Lagunas cooperated with prosecutors and testified before the grand jury even after having been threatened. This, he suggests, means that any threats were ineffective and could not have been the cause of Lagunas's absence. But Ervine overlooks Lagunas's concern that his grand jury testimony remain secret. Lagunas's willingness to testify in secret does not demonstrate that he was willing to testify in public. Second, Ervine argues that Lagunas may have been afraid to return to the United States for any number of reasons not related to Ervine, including the risk of being deported again. But in light of the severity of the threatening conduct in 2006 and Lagunas's demonstrated willingness to return to the United States—he returned at least three times between 2006 and 2009—the trial court reasonably concluded that Ervine's misconduct caused Lagunas's decision not to testify.

C.      *Brady* Claim

The trial court's denial of Ervine's *Brady* claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts. The court denied Ervine's claim because he failed to demonstrate that the state's mid-trial disclosure of an anonymous call log suggesting that "Slice and Dice" were Gonzalez's killers was prejudicial. *See United States v. Hunter*, 32 F.4th 22, 31 (2d Cir. 2022).

Suppression is prejudicial if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.); *id.* at 685 (opinion of White, J.)). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but

5

whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *Bagley*, 473 U.S. at 678 (opinion of Blackmun, J.)). A new trial is thus required whenever the undisclosed evidence is sufficient to "undermine confidence" in the verdict. *See Smith v. Cain*, 565 U.S. 73, 75 (2012) (cleaned up).

Here, Ervine cannot show a reasonable probability of a different result absent the late disclosure. First, the trial court granted Ervine a continuance after the log's disclosure, and when trial resumed, Ervine was permitted to recall witnesses and impeach their testimony using the log. *See United States v. Halloran*, 821 F.3d 321, 342 (2d Cir. 2016) (finding no *Brady* violation because "[t]he continuance gave [defendant] time to make 'effective use' of the [evidence]."). Second, the log itself was hearsay and was thus inadmissible for the truth of the "Slice and Dice" identification. Third, any prospect that earlier disclosure of the log would have resulted in the discovery of additional evidence, with *that* evidence sufficient to create a reasonable probability of a different result, is too speculative to support a *Brady* claim. *See Wood v. Bartholomew*, 516 U.S. 1, 6 (1995) (reversing Ninth Circuit's grant of habeas relief on Brady grounds "based on mere speculation" that suppressed polygraph results "might have led respondent's counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized").

\*　　　\*　　　\*

We have considered Ervine's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6